# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 22, 2016

Lyle W. Cayce
Clerk

No. 13-11305

RALPH S. JANVEY, In His Capacity as Court Appointed Receiver for the Stanford International Bank Limited, et al; OFFICIAL STANFORD INVESTORS COMMITTEE,

Plaintiffs – Appellants;

v.

THE GOLF CHANNEL, INCORPORATED; TGC, L.L.C., doing business as Golf Channel,

Defendants – Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before ELROD and SOUTHWICK, Circuit Judges.[*]

PER CURIAM:

Stanford International Bank, Limited paid $5.9 million to The Golf Channel, Inc., in exchange for a range of advertising services aimed at recruiting additional investors into Stanford's multi-billion dollar Ponzi scheme.[1] After the scheme was uncovered by the SEC and the district court seized Stanford's assets, the court-appointed receiver filed suit under the

---

[*] This opinion is being entered by a quorum of this court. 28 U.S.C. § 46(d).

[1] The factual background of this case is laid out in more detail in our two previous opinions. *See Janvey v. Golf Channel, Inc.* (*Golf Channel II*), 792 F.3d 539 (5th Cir. 2015), *vacating Janvey v. Golf Channel, Inc.* (*Golf Channel I*), 780 F.3d 641 (5th Cir. 2015).

No. 13-11305

Texas Uniform Fraudulent Transfer Act (TUFTA) to recover the $5.9 million paid to Golf Channel. The district court granted Golf Channel's motion for summary judgment, having determined that although Stanford's payments were fraudulent transfers under TUFTA, Tex. Bus. & Com. Code § 24.005(a)(1), Golf Channel had established the affirmative defense that it received the payments "in good faith and for a reasonably equivalent value," *id.* § 24.009(a).

We initially reversed the district court's judgment, reasoning based on the text of TUFTA, the comments in the Uniform Fraudulent Transfer Act (UFTA), and our binding precedent that the payments to Golf Channel were not for "value" because Golf Channel's advertising services could only have depleted the value of the Stanford estate and thus did not benefit Stanford's creditors. *Golf Channel I*, 780 F.3d at 646; *see* Bus. & Com. § 24.004(a). Subsequently, in response to the view in Golf Channel's petition for rehearing that the Supreme Court of Texas might not share our reading of TUFTA, we vacated our opinion in *Golf Channel I* and certified the following question to the Supreme Court of Texas:

> Considering the definition of "value" in section 24.004(a) of the Texas Business and Commerce Code, the definition of "reasonably equivalent value" in section 24.004(d) of the Texas Business and Commerce Code, and the comment in the Uniform Fraudulent Transfer Act stating that "value" is measured "from a creditor's viewpoint," what showing of "value" under TUFTA is sufficient for a transferee to prove the elements of the affirmative defense under section 24.009(a) of the Texas Business and Commerce Code?

*Golf Channel II*, 792 F.3d at 547.

The Supreme Court of Texas has now answered the question. *Janvey v. Golf Channel, Inc.* (*Golf Channel III*), 487 S.W.3d 560 (Tex. 2016). *Golf Channel III* instructed that:

> TUFTA's "reasonably equivalent value" requirement can be satisfied with evidence that the transferee (1) fully performed

2

under a lawful, arm's-length contract for fair market value, (2) provided consideration that had objective value at the time of the transaction, and (3) made the exchange in the ordinary course of the transferee's business.

*Id.* at 564. As for determining whether consideration "had objective value at the time of the transaction," *Golf Channel III* elaborated that the transfer must have "confer[red] some direct or indirect economic benefit to the debtor." *Id.* at 574. The opinion clarified that the "value" inquiry under TUFTA does not depend on "whether the debtor was operating a Ponzi scheme or a legitimate enterprise,"[2] so long as "the services would have been available to another buyer at market rates" had they not been purchased by the Ponzi scheme. *Id.* at 581, 570. *Golf Channel III* noted that consideration—especially in the form of consumable goods or services—can have objective value "even if the consideration neither preserved the debtor's estate nor generated an asset or benefit that could be levied to satisfy unsecured creditors." *Id.* at 577.

Applying these principles to this case, the Supreme Court of Texas determined that "Golf Channel's media-advertising services had objective value and utility from a reasonable creditor's perspective at the time of the transaction, regardless of Stanford's financial solvency at the time." *Id.* at 581–82. This was so, the court explained, because "had Stanford not purchased Golf Channel's television air time, the services would have been available to another buyer at market rates." *Id.* at 570. Accordingly, the transfer was for "value" as viewed from the reasonable creditor's perspective, even if the advertising services "only served to deplete Stanford's assets" "[b]ecause

---

[2] The Supreme Court of Texas noted that "value" may not exist under TUFTA where the consideration itself is illegal and left open the possibility that the debtor's status as a Ponzi scheme might impact whether the transferee took "in good faith." *Golf Channel III*, 487 S.W.3d at 581. Neither of those two points is disputed in this appeal.

acquiring new investors . . . ultimately extends the Ponzi scheme." *Id.* at 578, 582.

The Supreme Court of Texas's answer interprets the concept of "value" under TUFTA differently than we have understood "value" under other states' fraudulent transfer laws and under section 548(c) the Bankruptcy Code. *See Golf Channel III*, 487 S.W.3d at 573 ("Uniformity is a stated objective of the statute, but TUFTA is unique among fraudulent-transfer laws because it provides a specific market-value definition of 'reasonably equivalent value.'"). For example, applying Washington's UFTA statute, we have held that services that furthered a Ponzi scheme were not for "value" as a matter of law because "[t]he primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved." *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006). Similarly, under section 548(c) of the Bankruptcy Code, we have inquired whether the consideration provided in exchange for a transfer conferred a tangible economic benefit on the debtor, not whether the consideration (in that case, airplane fuel—a consumable good) had objective value in the abstract. *Butler Aviation, Int'l, Inc. v. Whyte* (*In re Fairchild Aircraft Corp.*), 6 F.3d 1119, 1125–27 (5th Cir. 1993), *abrogated on other grounds by In re Dunham*, 110 F.3d 286, 288–89 (5th Cir. 1997); *see also In re Randy*, 189 B.R. 425, 441–42 (Bankr. N.D. Ill. 1995) (holding, under section 548(c) of the Bankruptcy Code, that broker services provided to a Ponzi scheme had no value as a matter of law because recruiting new investors into the scheme "would only exacerbate the harm to the debtor's creditors").[3]

---

[3] In this case, "Golf Channel put forward no evidence that its advertising services preserved the value of Stanford's estate" or otherwise economically benefitted Stanford's creditors, even when examined at the time of the transaction. *Golf Channel II*, 792 F.3d at 545.

No. 13-11305

The binding effect of these prior decisions in their respective areas of law remains unaffected by *Golf Channel III*. *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (reciting the rule of orderliness). When interpreting a federal statute or a statute from a different state, "we are not bound by a state court's interpretation of a similar—or even identical—state statute." *Johnson v. United States*, 559 U.S. 133, 138 (2010). As for this case, the Supreme Court of Texas is the authoritative interpreter of TUFTA and we are bound by its answer to our certified question when applying that statute. We consequently AFFIRM the district court's grant of summary judgment for Golf Channel.[4]

---

[4] In their post-*Golf Channel III* brief to our court, the appellants seek judgment in favor of the Receiver on the ground that, before our court, Golf Channel forfeited any argument that the $5.9 million transfer satisfied an antecedent debt. *See Golf Channel II*, 792 F.3d at 546 n.7. They characterize the Supreme Court of Texas as having held that a fraudulent transfer in exchange for services is for "value" *only* if it satisfied a valid antecedent debt. TUFTA provides that a transfer in exchange for which "an antecedent debt is secured or satisfied" is a transfer for "value," Bus. & Com. § 24.004(a), and *Golf Channel III* referenced this provision in explaining why Golf Channel's advertising services had "value," 487 S.W.3d at 575 n.82, 576, 582. However, the Supreme Court of Texas was clear that section 24.004(a)'s enumeration of transfers that are for value is "nonexclusive," *Golf Channel III*, 487 S.W.3d at 574, and offered its antecedent-debt theory of "value" in this case only in the alternative, *id.* at 582 ("*Moreover*, as services were fully performed, each payment *also* had value under TUFTA by extinguishing claims against the estate for the value of those services." (emphasis added)). Golf Channel's forfeiture of the point is therefore not fatal to its position.

5