BALDOCE, J., concurring. The Administrative Procedure Act pro-vidés that'courts shall “hold unlawful and set aside agenéy action, findings, and conclusions [that are] ... arbitrary [and] capricious.” 5 U.S.C. §. 706(2)(A). We have held that an agency engages in “arbitrary” and “capricious” action when, inter alia, it “offer[s] an explanation for [such action] that runs counter to the evidence before the agency.” New Mexico ex rel. Richardson v. Bureau of Land Mgmt., 565 F.3d 683, 704 (10th Cir. 2009) (internal citation omitted). The question before us is whether the Bureau of Land 'Management (BLM) .engaged in arbitrary and capricious action when it issued the Wright Area leases on the assumption that there would be no “consequential ]” reduction in coal use, and thus environmental impact, :if it were to decline to issue such leases. The relevant environmental impact for purposes of this appeal is climate change, and the BLM has conceded that carbon dioxide emissions from coal use cause climate change. See App. at 978, 987. The Court’s opinion ably sets forth why, in light of the BLM’s concession that coal use causes climate change, the BLM’s assumption that' declining to issue .the Wright'Area leases would not result in less climate impact renders the decision to issue the leases arbitrary and capricious: (1) declining to issue the Wright Area leases would have the effect of removing some twenty percent of the nation’s present annual coal supply from the market; (2) replacement coal would be more costly; (3) as the cost of coal goes up, “basic 'supply and demand principles” predict that demand for coal goes down; and (4) lessened demand for coal results in less use of coal, which results in less impact on the climate. To assume that declining to issue the Wright Area leases would not have a “consequential ]” impact on cóál use, and thus the climate, the Court concludes, runs counter to basic supply and demand principles, Consistent with this conclusion, the Court characterizes the BLM’s analytical flaw as an “economic” one in its opinion. See Court’s Op. at 1237-38. Because the question before us is an economic one, and because in resolving that question we dispose of this appeal, I see no need to comment on matters of climate science, as the Court does when it attempts to distinguish this appeal from Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc., 462 U.S. 87, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). In Baltimore Gas, the Supreme Court held the Nuclear Regulatory Commission’s assumption that permanent storage of nuclear waste would not result in environmental harm was not arbitrary and capricious in part because the assumption dealt with an “area of special expertise, at the frontiers of science” and thus merited deference from the Court. Id. at 103-06, 103 S.Ct. 2246. The obvious distinction between this appeal and Baltimore Gas is this appeal does not turn on scientific expertise; it turns, instead and in this Court’s words, on “basic economic principles.” See Court’s Op. at 1237-38. Perplexingly, the Court does not cite this distinction in addressing Baltimore Gas. The Court attempts, instead, to distinguish this appeal from Baltimore Gas by positing that unlike assumptions about nuclear waste storage, assumptions about climate change “do[ ] not involve ‘the frontiers of science’ ” because “[cjlimate science ... is not a scientific frontier.” The assertion that climate science is settled science is, in my view, both unnecessary to this appeal and questionable as a factual matter. Such an assertion is not necessary to this appeal because there-is no disputed issue of climate science before us and thus no question of climate science we must decide whether to defer to the BLM on,[1] As set forth above, we can distinguish Baltimore Gas on other grounds. The assertion is questionable as a factual matter because it is contrary to evidence in the record. Section 4.2.14.1 of the Final Environmental Impact Statement (FEIS) states that “the science [of climate change] is not settled and there is strong debate among the scientific community that natural variability is the overwhelming factor influencing climate rather than the accumulation of anthropogenic GHG emissions in the atmosphere.” App. at 977. The FEIS also states that “[t]here has been, and continues to be, considerable scientific investigation and discussion as to the causes of the recent historic rise in global mean temperatures, and whether the warming trend will continue,” and “[g]lobal climate models are at this time imperfect and ... should not be used as a basis for public policy.” Id. at 978, 982. The Court neither addresses these statements nor cites any authority seconding its assertion that climate science is settled science. Contrary to this Court’s assertion, the Supreme Court has recognized that opposing views exist on climate science. See Am. Elec. Power Co. v. Connecticut, 564 U.S. 410, 417 n.2, 131 S.Ct. 2527, 180 L.Ed.2d 435 (2011). In commenting on the merits of climate science, I fear the Court suggests we have adjudicated the BLM’s concession about climate change as a dispositive matter, when the validity of such concession was never before us on this appeal. The oft-cited axiom that we decide only the matters before us counsels us to be more prudent with our choice of commentary. See, e.g., Johnson v. United States, 559 U.S. 133, 144, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (“The issue is not before us, so we do not decide it.”). Accordingly, I concur with the Court’s analysis of the BLM’s economic assumption and disposition of this appeal on that basis, without joining its conclusion about climate science. . Even if a question of climate science was before us, I am not inclined to agree with the Court's view that we ought not defer to agencies on such a question. "Federal judges lack the scientific, economic, and technological resources an agency can utilize in coping with issues” involving climate change and regulation of greenhouse gas emissions. Am. Elec. Power Co. v. Connecticut, 564 U.S. 410, 428, 131 S.Ct. 2527, 180 L.Ed.2d 435 (2011). “Judges may not commission scientific studies or convene groups of experts for advice. ..." Id. We are, instead, "confined by a record comprising the evidence the parties present.” Id. In' view of our limitations, it seems to me that matters of climate science and its attendant policy implications are precisely the type of questions we should defer to agencies on under the present' state of the law.