CONCURRING IN THE JUDGMENT KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I agree that Williams’s motion rises or falls with United States v. Anderson, 695 F.3d 390 (6th Cir. 2012), and that no intervening decision of either the United States Supreme Court or our court sitting en banc authorizes us to depart from its holding, see Salmi v. Sec’y of Health & Human Servs., 774 F.2d 685, 689 (6th Cir. 1985). Even if, for example, we understood United States v. Perry, 703 F.3d 906 (6th Cir. 2013), to be inconsistent with Anderson, “we must defer to a prior case when two panel decisions conflict,” Kovacevich v. Kent State Univ., 224 F.3d 806, 822 (6th Cir. 2000). Accordingly, because Anderson held that both prongs of Ohio’s felonious assault statute, Ohio Rev. Code § 2903.11—just like both’ prongs of its functionally equivalent aggravated assault statute, Ohio Rev. Code § 2903.12—“necessarily require[ ] proof that the defendant used ‘force capable of causing physical pain or injury,’” Anderson, 695 F.3d at 400 (quoting Johnson v. United States (Johnson I), 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010)); see id. at 402, nothing has changed to free us (or, more importantly, Williams) from Anderson’s power. Because Anderson has not fallen, Williams’s motion does. 'I write' separately to emphasize my agreement with those who have already ably explained why Anderson should fall.[1] The Armed 'Career Criminal Act (ACCA), 18 U.S.C. § 924(e), seeks to punish and deter, of course, armed career 'criminals. To do that, it prescribes enhanced sentences for people' who unlawfully possess firearms under 18 U.S.C. §- 922(g) and have “three previous convictions ... for a violent felony or a serious drug offense,” 18 U.S.C. § 924(e)(1). When we analyze a state criminal statute to determine whether a conviction under it-qualifies as predicate crime for purposes of the ACCA, we employ, as the Supreme Court requires, the “categorical approach.” Mathis v. United States, — U.S.-, 136 S.Ct. 2243, 2248, 195 L.Ed;2d 604 (2016). We “focus solely on whether the- elements of the crime- of conviction sufficiently match the elements of [the relevant ACCA provision], while ignoring the particular facts of the case.” See id; Johnson I, 559 U.S. at 138, 130 S.Ct. 1265. If the state statute sweeps “more broadly than” what the ACCA points to, then “no conviction under that law [can] count as an ACCA predicate.” Mathis, 136 S.Ct. at 2248-49. If a statute “list[s] elements in the alternative, and thereby define[s] multiple crimes,” we “look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determihe what crime, with what elements, a defendant was convicted of.” Id. at 2249; see also Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). And if we can tell the answer to that question, we “can then compare that crime, as the categorical approach commands, with the relevant generic offense.” See Mathis, 136 S.Ct. at 2249. But if “nothing in the record” allows us “to conclude that [the defendant’s conviction] rested upon anything more than the least of [the potential alternative crimes],” then “his conviction was a predicate conviction” under the ACCA only if even the most questionable element passes muster. See Johnson I, 559 U.S. at 137, 130 S.Ct. 1265 (citation omitted). The core analytical process, in other words, is the same: for any set of crime-defining elements under which a defendant’s judgment of conviction might have been entered, those elements must sweep no further than the ACCA’s borders, or else there is a categorical mismatch and the conviction cannot serve as a predicate offense. See, e.g., Mathis, 136 S.Ct. at 2248-49; Johnson I, 559 U.S. at 136-37, 130 S.Ct. 1265. Relevant to our purposes here, the ACCA states that a crime can qualify as a “violent felony” under § 924(e)(1) if it “has as an element the use, attempted use, or threatened use of physical force against the person of another.” Id. § 924(e)(2)(B)(i).[2] And the U.S. Supreme Court has made clear that in referring to “physical force,” Congress “mean[t] violent force—that is, force capable of causing physical pain or injury to another.” Johnson I, 559 U.S. at 140, 130 S.Ct. 1265; see also id. at 138, 130 S.Ct. 1265 (“The adjective ‘physical’ is clear in meaning.... It plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force.”). This definition makes sense, since the ACCA exists to punish people who are armed career criminals: it sweeps in, for example, people who repeatedly commit acts of violent force against others. That definition does not include, however, someone who touches another “on the shoulder without consent.” Id. at 138, 130 S.Ct. 1265 (citation omitted). Nor, we must assume, does the definition include “a person who surreptitiously poisons another, or removes the brakes from another’s car,” or “a parent who continues to feed his or her child a steady diet of junk food until the child suffers the heart damage that doctors promised,” see Anderson, 695 F.3d at 404 (White, J., concurring), or a person who mercilessly mocks and taunts another until he suffers a nervous breakdown. These acts are likely punishable under other statutes, but they are not properly understood as acts of “violent force.” See Johnson I, 559 U.S. at 140, 130 S.Ct. 1265. That is, they are not the kinds of bad acts that Congress targeted in enacting § 924(e). See id. At least one prong of Ohio’s felonious assault and aggravated statutes seems to suffer from this same, categorical flaw: it sweeps in conduct that Congress did not target in enacting § 924(e). Ohio Rev. Code § 2903.11(A) declares that no one shall “knowingly”: (1) Cause serious physical harm to another or to another’s unborn; (2) Cause or attempt to cause physical harm to another or to another’s unborn by means of a deadly weapon or dangerous ordnance. Id. But what constitutes “serious physical harm” within the meaning of § 2903.11(A)(1)? Section 2901.01(A)(5) tells us. It declares that “‘[s]erious physical harm’ ” means any of five possibilities. And one of those possibilities is “[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment.” Ohio Rev. Code § 2901.01(A)(5)(a). This, as Williams points out, creates a categorical mismatch: “the elements of Ohio’s felonious assault statute may be met without any physical touching or physiological impairment, but only by the defendant causing the victim a mental illness.” Appellant’s Br. at 8. And the Ohio courts have, in fact, interpreted the statute this way. See State v. Hunter, 2005-Ohio-443, 2005 WL 281159, at ¶ 18 (Ohio Ct. App. Feb. 4, 2005) (“[F]elonious assault could be committed without the commission of an assault where the only ‘serious physical harm’ to the victim was mental harm.”); State v. Cooper, 139 Ohio App.3d 149, 743 N.E.2d 427, 434 (2000) (“Not only may a person commit felonious assault by perpetrating an act causing mental illness, but a person may commit felonious assault when his or her failure to act causes mental illness.”); State v. Elliott, 104 Ohio App.3d 812, 663 N.E.2d 412, 415 (1995) (holding that § 2903.11(A) “is drafted so broadly as to encompass a failure to act which results in serious physical harm” when that physical harm is “defendant’s failure to act to prevent [his child] from discovering his mother’s [dead] body”). Properly understood, a statute “drafted so broadly as to encompass” harm through acts that do not involve violent force, Elliott, 663 N.E.2d at 415, cannot qualify as a “violent felonfy] under the force prong of the ACCA,” Anderson, 695 F.3d at 406 (White, J., concurring). When “considering an ACCA enhancement under the categorical approach,” we “must take state law as [we] find[ ] it, including state courts’ interpretations of state law.” United States v. Collier, 493 F.3d 731, 737 (6th Cir. 2007). Here, one prong of Ohio’s felonious assault statute, as codified in the Ohio Revised Code and interpreted by Ohio courts, sweeps more broadly than what the elements clause of the ACCA delimits. Because Anderson condones this impermissible excursion beyond the ACCA’s categorical bounds, we ought to reconsider Anderson en banc. Until we do, however, I agree that Anderson controls this case. I thus concur in the judgment; we are not empowered under current binding Sixth Circuit caselaw to give Williams the relief that he justifiably seeks. . Williams’s briefing, Judge Merritt’s dissent, and our court's prior order authorizing Williams’s motion, In re Williams, No. 16-3411, at 2-4 (6th Cir. Oct. 27, 2016), also indicate that Anderson is suspect. The crux of the problem is compellingly foreshadowed by Judge White's concurrence in Anderson itself. See United States v. Anderson, 695 F.3d 390, 403-06 (6th Cir. 2012) (White, J., concurring) (arguing that Ohio’s aggravated assault and felonious assault statutes qualify, as ACCA predicate offenses only under the then-permissible residual clause rather than the elements clause). . This provision is known as the "force clause” or the "elements clause,” in light of its defining a particular element—violent physical force—that must be present. A crime can also qualify as a predicate offense if it "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii). This provision is known as the "enumerated clause,” in light of its enumerating generic crimes that qualify as predicate offenses. See, e.g., United States v. Maldonado-Palma, 839 F.3d 1244, 1246-47 (10th Cir. 2016), cert. denied, - U.S. -, 137 S.Ct. 1214, 197 L.Ed.2d 255 (2017). As Judge Rogers’s opinion notes, the once-permissible residual clause—the erstwhile third means by which a conviction could qualify as an ACCA predicate—was struck down by the Supreme Court in Johnson v. United States (Johnson II), - U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).