[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 07, 2011
JOHN LEY
CLERK

No. 10-11728
Non-Argument Calendar

_____

D.C. Docket No. 4:09-cr-00416-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES BERNARD JONES, JR.,
a.k.a. Eric Bernard Lloyd,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(January 7, 2011)

Before BARKETT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

James Bernard Jones, Jr., appeals his 160-month sentence for distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). He raises three claims on appeal. First, he argues that the district court plainly erred in finding that his Florida conviction for battery on a law-enforcement officer ("BOLEO") was a crime of violence for purposes of career-offender classification. Second, he argues that the district court plainly erred in calculating his base offense level on the basis of 89 grams of cocaine. Finally, he argues that his sentence was substantively unreasonable. For the reasons set forth below, we affirm.

I.

In July 2009, a confidential source ("CS") for the Drug Enforcement Administration ("DEA") met with his handler about purchasing crack cocaine from Jones. The CS subsequently arranged the transaction. When the CS and Jones met, Jones attempted to sell him powder cocaine, but the CS insisted on crack cocaine. Jones said that he would cook the powder into crack, but it would take about an hour. Later that afternoon, Jones provided 21.5 grams of crack cocaine, which the CS purchased from him. At two subsequent meetings, the CS purchased from Jones 19.2 grams and 21.5 grams of crack cocaine, respectively.

The CS arranged a fourth transaction with Jones, asking him to deliver two ounces of crack cocaine. When Jones arrived, agents moved in to arrest him, and

Jones fled. The agents chased him for several blocks at a high rate of speed. After a brief chase, Jones's vehicle struck the marked unit and came to a stop. When Jones exited his vehicle and fled on foot, the agents apprehended him. A search of his vehicle and person yielded a total of 23.8 grams of crack cocaine and 3 grams of powder cocaine.

Jones was charged with three counts of distribution of five grams or more of cocaine base (Counts 1-3) and one count of possession with intent to distribute five grams or more of cocaine base (Count 4), all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). He ultimately pled guilty to a lesser included offense of Count 1, distribution of an unspecified quantity of cocaine base in violation of § 841(a)(1) and (b)(1)(C), and the other three counts were dismissed.

The presentencing investigation report ("PSI") assigned a base offense level of 30, based on 86 grams of cocaine base and 3 grams of powder cocaine, and added a 2-level enhancement for reckless endangerment during flight, for an adjusted offense level of 32. Jones's prior state convictions for BOLEO and strong-arm robbery qualified him for career-offender status, which also resulted in an adjusted offense level of 32. Three levels were deducted for acceptance of responsibility, yielding a total offense level of 29.

At the sentencing hearing, the district court found that Jones had only

manufactured crack cocaine for the CS after the CS had refused to purchase the powder cocaine and insisted on crack. Furthermore, Jones went into the next three transactions knowing that the CS would insist on crack cocaine rather than powder cocaine. The court concluded that it was "obvious" that the CS had insisted on crack cocaine because his DEA handlers had sent him to make the purchase, and crack cocaine results in more severe penalties than powder cocaine. Accordingly, the court recalculated the drug-quantity guidelines as if Jones had possessed 89 grams of powder cocaine. The change reduced his base offense level from 30 to 16, but because of his career-offender status, his total offense level remained 29.

Jones argued that a sentence at the low end of his guideline range would be reasonable. He introduced character testimony about his financial assistance to people in his community, the fact that he ended his crack-cocaine addiction in 1997, and his efforts to help others end their own drug addictions. The court found that the witnesses were sincere, and it expressed its gratitude that Jones had been able to overcome his addiction, but it noted that Jones's criminal history included 16 felonies and many misdemeanors, and none of his previous arrests or terms of imprisonment had served to deter him from his criminal activity. It concluded that a 160-month sentence would afford just punishment and serve as an adequate deterrent. Jones objected to the reasonableness of the sentence, but

4

did not object to his career-offender classification or the calculation of the drug quantity.

## II.

A district court must begin the sentencing process by correctly calculating the applicable guideline range. *Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007). Likewise, we begin our review of a sentence for reasonableness by ensuring that the district court did not commit any significant procedural error, such as improperly calculating the guideline range. *Id.* at 51, 128 S.Ct. at 597. Where, as here, the defendant fails to object in the district court to a purported procedural error, we review for plain error. *See United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006). Thus, Jones must show (1) an error that (2) is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). At the sentencing hearing, the government must prove by a preponderance of the evidence any fact to be considered by the district court, *United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2005), including the applicability of any guideline enhancements, *United States v. Ndiaye*, 434 F.3d 1270, 1300 (11th Cir. 2006).

The career-offender guidelines define a "crime of violence" as a felony offense that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Here, Jones's career-offender designation turns on whether the BOLEO offense satisfies the physical-force prong of the crime-of-violence definition.

When determining whether a prior offense qualifies as a crime of violence, "the practical difficulties of holding mini-trials . . . counsel against looking beyond the fact of conviction," so a district court must take a very limited approach to "looking behind" the fact of conviction. *United States v. Spell*, 44 F.3d 936, 939 (11th Cir. 1995). Concerns of constitutionality "counsel[] us to limit the scope of judicial factfinding on the disputed generic character of a prior plea [or] the generic implication of a jury's verdict." *Shepard v. United States*, 544 U.S. 13, 25-26, 125 S.Ct. 1254, 1262-63, 161 L.Ed.2d 205 (2005). Therefore, analysis of a state guilty plea is limited to the statutory definition, the terms of the charging document, the terms of a written plea agreement or transcript of plea colloquy in

6

which the defendant confirmed the factual basis for the plea, or explicit factual findings by the judge to which the defendant assented. *Id.* at 16, 26, 125 S.Ct. at 1257, 1263. However, if the PSI prepared for the district court includes a description of the facts underlying the state-court offense, and the defendant does not challenge that description, the district court may consider it, as well. *See United States v. Wade*, 458 F.3d 1273, 1275, 1278 (11th Cir. 2006) (noting defendant's failure to object to PSI's description based on unidentified "court documents").

An individual commits the Florida offense of battery when he (1) "[a]ctually and intentionally touches or strikes another person against the will of the other," or (2) "[i]ntentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a). This offense is ordinarily a first-degree misdemeanor, *id.* § 784.03(1)(b), but is elevated to a third-degree felony if it is committed on a law-enforcement officer, *id.* § 784.07(2)(b). A Florida BOLEO offense cannot satisfy the physical-force definition of the Armed Career Criminal Act ("ACCA") merely by satisfying the common-law definition of force, which encompasses "even the slightest offensive touching." *Johnson v. United States*, 559 U.S. __, __, 130 S.Ct. 1265, 1270, 176 L.Ed.2d 1 (2010). Rather, in the context of the statutory definition of "violent felony," the phrase "physical force" means "force capable of

7

causing physical pain or injury to another person." *See id.* at __, 130 S.Ct. at 1271. The word "violent" connotes "a substantial degree of force." *Id.* Similarly, "the fact of a conviction for felony battery on a law enforcement officer in Florida, standing alone, no longer satisfies the 'crime of violence' enhancement criteria as defined under the 'physical force' subdivision of [§] 4B1.2(a)(1) of the [S]entencing [G]uidelines." *United States v. Williams*, 609 F.3d 1168, 1169-70 (11th Cir. 2010).

Here, the record does not contain the charging document for Jones's BOLEO offense, a plea agreement, a transcript of the plea colloquy, or any explicit factual findings by the state trial judge. The only information available about the offense is the statement in the PSI that, "[a]s Officer Fernando approached, Jones pushed the officer to the ground by using both hands." Yet because Jones did not object to this description, the district court could properly consider it to determine which statutory phrase was the basis for his conviction. *See Wade*, 458 F.3d at 1278. Thus, the district court did not plainly err in finding that Jones was convicted of intentionally striking a law enforcement officer and that a conviction under that portion of the statute necessarily involves the use of substantial physical force capable of causing physical pain or injury. *See Johnson*, 559 U.S. at __, 130 S.Ct. at 1270-71. Accordingly, Jones's career-offender classification was not

8

plainly erroneous. *See Massey*, 443 F.3d at 818.

### III.

The base offense level is to be determined on the basis of all relevant conduct, including all of the defendant's acts or omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A), (a)(2). "Application of this provision does not require the defendant . . . to have been convicted of multiple counts." *Id.* § 1B1.3, comment. (n.3). Thus, if the defendant engages in multiple drug sales as part of the same course of conduct or common scheme or plan, his base offense level should be based on the total quantity from all of the sales, even if he is only convicted of a single count charging only one of the sales. *Id.*

Here, Jones completed three sales of cocaine base to the CS and was arrested on his way to conduct a fourth sale. There is no indication in the record that these four incidents were unconnected. The district court did not plainly err in finding that the sales were part of the same course of conduct and, thus, that Jones was accountable for all 89 grams of cocaine. *See* U.S.S.G. § 1B1.3, comment. (n.3); *Massey*, 443 F.3d at 818. Furthermore, as Jones was properly sentenced as a career offender, his final offense level and sentencing range were not affected by the drug-quantity determination. *See Olano*, 507 U.S. at 732, 113 S.Ct. at 1776

9

(requiring the defendant to show that his substantial rights have been affected).

Accordingly, Jones has not established plain error as to this issue.

IV.

We review the substantive reasonableness of a sentence under an abuse-of-discretion standard, *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010) (*en banc*), taking into account the totality of the facts and circumstances, *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. We will reverse a sentence under the abuse-of-discretion standard only if the district court has made a clear error of judgment. *Id.* at 1189. We "ordinarily . . . would expect a sentence within the Guidelines range to be reasonable." *United States v. Talley*, 431 F.3d 784, 787-88 (11th Cir. 2005). The appellant bears the burden of establishing that the sentence is unreasonable. *Id.* at 788.

After *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the district court must first "consult the Guidelines and correctly calculate the range provided by the Guidelines," and then consider the factors in 18 U.S.C. § 3553(a) and determine a reasonable sentence. *Talley*, 431 F.3d at 786. Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for

10

the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the sentencing guideline range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victims. *Id.* (discussing § 3553(a)). The sentence must be no greater than necessary to punish, deter, protect the public, and provide the training and care outlined in the statute. *Id.* § 3553(a). The district court does not abuse its discretion when it merely attaches "great weight" to a single, permissible factor or set of factors. *Gall*, 552 U.S. at 56-59, 128 S.Ct. at 600-02.

Here, the district court stated that it had considered the facts in the PSI, the defense's character witnesses, and the § 3553(a) factors. It clearly considered the circumstances surrounding Jones's offense, particularly the alleged sentencing-factor manipulation that led to Jones's sale of crack cocaine rather than powder, and it ordered the recalculation of the base offense level in order to address that concern. It noted the character witnesses' sincere testimony to Jones's helpfulness in his community, and it expressed its gratitude that Jones had overcome his drug addiction. It then discussed Jones's extensive criminal history and the lack of deterrent effect of his previous periods of imprisonment, and it determined that a

11

sentence of 160 months, in the middle of the guideline range, would afford just punishment and adequate deterrence. The court's decision was not an abuse of discretion. *Irey*, 612 F.3d at 1188-89.

For the foregoing reasons, we affirm Jones's sentence.

**AFFIRMED.**