STATE OF NORTH CAROLINA v. WAYNE ANTHONY HUSS

No. COA12-250

(Filed 20 November 2012)

**1. Rape—second-degree—physically helpless victim—evidence not sufficient**

Convictions for second-degree rape and second-degree sex offense were reversed where the State proceeded under the theory that the victim was physically helpless and evidence of defendant's size, martial arts prowess, and actions was not sufficient. In determining whether a victim is "physically helpless," the court looks to factors and attributes unique and personal to the victim. Defendant's contention that the category of "physically helpless" does not apply because the victim did not suffer a permanent physical condition was rejected.

**2. Kidnapping—first-degree—intent—second-degree rape—helpless victim—evidence not sufficient**

A first-degree kidnapping conviction was reversed where the indictment alleged the intent to commit second-degree rape but the State proceeded under an improper theory of that offense (a physically helpless victim) and did not sufficiently prove the particular felonious intent alleged.

Appeal by defendant from judgments entered 1 July 2012 by Judge Beverly T. Beal in Lincoln County Superior Court. Heard in the Court of Appeals 10 October 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Douglas W. Corkhill, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Daniel Shatz, for defendant.*

ELMORE, Judge.

Wayne Anthony Huss (defendant) appeals from judgments entered upon jury convictions of 1) first-degree kidnapping, 2) second-degree sexual offense, and 3) second-degree rape. Judgment was arrested on the second-degree rape conviction, and defendant was sentenced to 71 to 95 months imprisonment on both the first-degree kidnapping and second-degree sexual offense convictions, to run consecutively. After careful consideration, we reverse the judgments of the trial court.

## I. Background

Defendant and the victim first met in the fall of 2006. At that time, the victim was employed as the director for an after-school program at Central Latino, a non-profit organization in Hickory. Defendant was a martial arts instructor who taught classes at the local YMCA. The two met when the victim attended a self-defense class taught by defendant. Later, in January 2007, the victim invited defendant to begin teaching self-defense programs at Central Latino. Soon after, defendant and the victim began a romantic relationship.

Their relationship continued for several months, but the couple began experiencing difficulties in March of that same year. Defendant became frustrated with the victim because she maintained an ongoing relationship with her prior boyfriend. The victim was similarly

frustrated with defendant, because she felt as though he was not giving her enough space. Ultimately, the couple decided to end their relationship. In doing so, they agreed to meet on 9 May 2007 at defendant's home, and, without telling the victim, defendant decided to videotape their interactions during the meeting.

Both the victim and defendant disagree as to what happened that day. According to defendant, he and the victim engaged in consensual sex, which included vaginal intercourse, digital penetration, the use of a vibrator, and defendant tying the victim's hands behind her back with a martial arts belt. Defendant maintains that this type of sexual activity was not abnormal for the couple, as they often engaged in spanking, role-playing, and bondage.

However, according to the victim, the two had never before engaged in the use of restraints or role-playing during consensual sex. In this particular instance, the victim maintains that defendant insisted the two have sex one last time, and that she realized he wasn't going to let her go unless she did.

After the event, the victim did not immediately discuss details of the incident with anyone. However, several days later she saw defendant again at a festival in downtown Hickory. There, the two got into a public argument, and the victim then decided to report the event to the police.

Defendant was arrested on 1 August 2007 and charged with 1) first-degree kidnapping, 2) second-degree sexual offense, and 3) second-degree rape. On 28 July 2011, the case came on for trial. At the close of all evidence, defendant moved to dismiss all charges, which the trial court denied. On 1 July 2011, defendant was convicted of all charges. Judgment was arrested on the second-degree rape conviction, and defendant was sentenced to 71 to 95 months imprisonment on both the first-degree kidnapping and second-degree sexual offense convictions, to run consecutively. Defendant now appeals.

## II. Arguments

Defendant presents four arguments on appeal. He argues that: 1) The trial court erred in denying his motion to dismiss all charges at the close of evidence because the victim was not "physically helpless" as defined in N.C. Gen. Stat. §14-27.1(3); 2) The trial court erred in failing to dismiss the kidnapping charge because there was insufficient evidence of a restraint separate from any rape or sex offense; 3) The trial court erred in failing to intervene *ex mero motu* in response

to the prosecutor's closing arguments; 4) The trial court committed plain error by failing to instruct the jury that lack of consent is an element of rape and sexual offense of a "physically helpless" person. We agree, in part, with defendant's first argument. As such, we need not address defendant's remaining arguments on appeal.

## III. Analysis

### A. Physically helpless

**[1]** Defendant first argues that the trial court erred in denying his motion to dismiss, because the victim was not "physically helpless" as the term is defined under our general statutes. According to defendant, the term "physically helpless" applies only to individuals who are asleep, who are unconscious, or who suffer from a permanent physical condition. We agree, in part, with defendant's argument.

"This Court reviews the trial court's denial of a motion to dismiss de novo." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

Here, the indictment charged defendant, in part, with second-degree rape under N.C. Gen. Stat. § 14-27.3(a), and second-degree sexual offense under N.C. Gen. Stat. § 14-27.5(a). According to the second-degree rape statute,

A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person: (1) By force and against the will of the other person; or (2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless.

484      IN THE COURT OF APPEALS

N.C. Gen. Stat. § 14-27.3(a)(1)-(2) (2012). The language of the second-degree sexual offense statute is nearly identical, with the term "sexual act" replacing "vaginal intercourse." *See* N.C. Gen. Stat. § 14-27.5 (2012). At trial, the State proceeded under a theory that the victim was "physically helpless," in essence, prosecuting defendant only under N.C. Gen. Stat. § 14-27.3(a)(2) and N.C. Gen. Stat. § 14-27.5(a)(2). Thus, at issue is whether the victim in this case was "physically helpless."

According to our General Statutes, "'[p]hysically helpless' means (i) a victim who is unconscious; or (ii) a victim who is physically unable to resist an act of vaginal intercourse or a sexual act[.]" N.C. Gen. Stat. § 14-27.1(3) (2012). Here, neither party contends that the victim was unconscious during the event. Thus, we will review whether the victim fell under the second category of "physically helpless."

Defendant argues that our Courts have limited this category to apply only to victims who suffer from some permanent physical disability or condition. In support of his argument, he directs our attention to two cases: 1) *State v. Atkins*, 193 N.C. App. 200, 666 S.E. 2d 809 (2008); 2) *State v. Joines*, 66 N.C.App. 459, 311 S.E.2d 49, *rev'd on other grounds*, 311 N.C. 398, 319 S.E.2d 282 (1984). In *Atkins*, the victim was deemed "physically helpless" because she was an 83-year-old woman who suffered from arthritis. Similarly in *Joines*, the victim suffered from multiple sclerosis and was thus found to be "physically helpless." Defendant argues that these are the only two cases in which our Courts have addressed the second category of "physically helpless." Likewise, the State concedes that there are a "dearth of decisions interpreting physically helpless victims in sex offense cases." Based on this lack of authority, defendant argues that the second category of "physically helpless" does not apply to the victim here, because she did not suffer from any permanent physical condition. We reject this argument, but we nonetheless conclude that the victim here did not fall within the special class of victims the term "physically helpless" was meant to protect. *See Atkins*, 193 N.C. App. at 204, 666 S.E.2d at 812 ("N.C. Gen. Stat. § 14-27.3(a)(2)[] is applicable when the victim falls within a special class of victims[.]").

First, we do not think it would be wise for this Court to adopt such a strict application, as defendant suggests, of the term "physically helpless." In *Atkins*, this Court established that "a 'physically helpless' victim, as used within N.C. Gen. Stat. § 14-27.3(a)(2), is a

victim who is physically unable [[t]o strive or work against; oppose actively] an act of vaginal intercourse or a sexual act[.]" Id. at 205, 666 S.E.2d at 812-13 (alterations in original). There, this Court examined a number of factors to determine that the victim was "physically helpless." We determined that "[g]iven the evidence of Brown's age, frailty, and physical limitations, there is evidence from which the jury could reasonably conclude that Brown was not able to actively oppose or resist her attacker." Id. at 205, 666 S.E.2d at 813. Thus, contrary to defendant's contention, it is clear that this Court in Atkins considered more than just the victim's physical disability in determining that she was "physically helpless."

Rather, what this Court in Atkins considered were a number of factors and attributes that were unique and personal to the victim, which rendered the victim physically unable to strive or oppose an act of vaginal intercourse or a sexual act. Upon a de novo review of the record, we are unable to find similar evidence concerning the victim here.

At trial, the State presented evidence that defendant "had fought professionally" and that he "was very high ranked" in martial arts. Further, the victim testified that at the time of the event, she weighed "125, maybe 130 max[]" and that defendant weighed "[m]aybe 250, 260[,]" twice as much as her. She also testified that "[w]ell, a lot of the time he had—he was on top of one of my arms, and one of my legs was in like a submission hold." She further explained that "he got a martial arts belt and between the middle of the floor and the couch, tied my hands behind my back."

Based on this evidence, the State argues that the victim was "physically helpless." However, we disagree for a number of reasons. First, as we have discussed, in determining whether a victim is "physically helpless," this Court looks to factors and attributes unique and personal of the victim. Thus, the evidence that defendant was 1) a skilled fighter and 2) weighed twice as much as the victim is not dispositive of whether the victim was "physically helpless." Second, the evidence that defendant 1) pinned the victim in a submissive hold and 2) tied her hands behind her back is, again, not a unique and personal attribute of the victim, but rather, more indicative of the use of force. See State v. Scott, 323 N.C. 350, 372 S.E.2d 572 (1988) (Finding sufficient evidence to support the defendant's guilt of second-degree rape by force because he pinned the victim against the kitchen sink with one of his arms on each side of her body.).

Thus, we conclude that the State failed to present sufficient evidence at trial to establish that the victim was "physically helpless." However, it appears from the record that the State did present evidence sufficient to establish that defendant engaged in sexual acts with the victim by force and against her will. This Court has held that "[w]here there is evidence that a rape has been effectuated by force and against the will of the victim, the best practice is for the State to prosecute the defendant under the theory codified by N.C. Gen. Stat. § 14-27.3(a)(1)" and not under N.C. Gen. Stat. § 14-27.3(a)(2). *Atkins*, 193 N.C. App. at 206, 666 S.E.2d at 813. Accordingly, we reverse the second-degree rape and second-degree sex offense judgments.

## B. First-degree kidnapping

[2] As a result, we must also reverse the first-degree kidnapping judgment. The elements of first-degree kidnapping as applicable here are: 1) the confinement or restraint of any other person 16 years of age or over, 2) for the purpose of facilitating the commission of any felony. *See* N.C. Gen. Stat. § 14-39(a)(2) (2012). Further, "[w]hen an indictment alleges an intent to commit a particular felony, the state must prove the particular felonious intent alleged." *State v. White*, 307 N.C. 42, 48, 296 S.E.2d 267, 270 (1982) (citations omitted).

Here, the indictment alleged that "the defendant named above unlawfully, willfully, and feloniously did kidnap [the victim], a person who has attained the age of 16 years by unlawfully restraining the victim, without the victim's consent, and for the purpose of facilitating the commission of a felony, second[-]degree rape." Thus, because the State proceeded under an improper theory of second-degree rape, we are unable to find that the State sufficiently proved the particular felonious intent alleged here. Accordingly, we reverse the first-degree kidnapping judgment.

## IV. Conclusion

In sum, we reverse the judgments of the trial court.

Reversed.

Judges STROUD and BEASLEY concur.