WILKINSON, Circuit Judge,
dissenting:
North Carolina’s, second-degree rape statute punishes predatory acts committed against society’s most vulnerable individuals. To violate the contested portion of this statute, one must have taken advantage of a mentally or physically defenseless person to engage in sexual intercourse — all the while knowing of the victim’s impaired condition. N.C. Gen. Stat. § 14 — 27.3(a)(2). This law protects people considered incapable of volitional acts from such callous conduct.
The majority, however, asks us to accept a disquieting proposition: that a defendant who “engages in vaginal intercourse with another person ... [w]ho is mentally disabled, mentally incapacitated, or physically helpless,” with .knowledge of that vulnerability, has somehow not committed a forcible sex offense. Id. How can that be? A proper reading of the law confirms the common intuition about the nature of this crime. It inherently involves the kind of force that is emblematic of a “crime of violence” under the relevant provision of the United States Sentencing Guidelines. U.S.S.G. § 4B1.2(a)(l) & cmt. n. 1. Both this court and North Carolina’s courts have specifically recognized the forcible nature of these sorts of acts, and rightly so. I do not understand how the knowing, forcible sexual subjugation of helpless human beings fails to qualify as a crime of violence. With all respect for my friends in the majority, I dissent.[1]
I.
Under the Guidelines provisions for firearms offenses, a defendant who previously sustained a felony conviction for a “crime of violence” is subject to a heightened base offense level. U.S.S.G. § 2K2.1(a)(4)(A). A “crime of violence” may refer to any felony that “has as an element the use, attempted use, or threatened use of physi *349 cal force against the person of another.” Id. § 4B1.2(a)(l); see id. § 2K2.1 cmt. n. 1 (cross-referencing the provision for career offenders). As the Guidelines commentary explains, the term “crime of violence” also covers a number of enumerated offenses, including “murder, manslaughter, Mdnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.” Id. § 4B1.2 cmt. n. 1; see id. § 2K2.1 cmt. n. 1. This list of crimes by the Sentencing Commission is “authoritative.” Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The term “crime of violence” thus expressly encompasses forcible sex offenses.
A.
Was Shell’s prior crime a forcible sex offense? We begin with the state statute under which he was convicted.[2] Our charge is to determine the range of actions that North Carolina would realistically classify as second-degree rape. This is a practical exercise, not a dreamy one about every conceivable scenario to which the statute might apply. See United States v. Diaz-Ibarra, 522 F.3d 343, 348 (4th Cir.2008) (requiring “ ‘a realistic 'probability, not a theoretical possibility,’ that the state would apply its statute to conduct that falls outside the definition of ‘crime of violence’” (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007))).
North Carolina defines the felony of second-degree rape as follows:
(a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:
(1) By force and against the will of the other person; or
(2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing, the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless.
N.C. Gen.Stat. § 14-27.3(a)(l)-(2). Another state provision, in turn, defines each of the three mental or physical conditions identified in the second-degree rape statute:
(1) “Mentally disabled” means (i) a victim who suffers from mental retardation, or (ii) a victim who suffers from a mental disorder, either of which temporarily or permanently renders the victim substantially incapable of appraising the nature of his or her conduct, or of resisting the act of vaginal intercourse or a sexual act, or of communicating unwillingness to submit to the act of vaginal intercourse or a sexual act.
*350 (2) “Mentally incapacitated” means a victim who due to any act committed upon the victim is rendered substantially incapable of either appraising the nature of his or her conduct, or resisting the act of vaginal intercourse or a sexual act.
(3) “Physically helpless” means (i) a victim who is unconscious; or (ii) a victim who is physically unable to resist an act of vaginal intercourse or a sexual act or communicate unwillingness to submit to an act of vaginal intercourse or a sexual act.
Id. § 14 — 27.1(1)—(3). The import of these provisions is plain. The victims under this North Carolina law cannot comprehend the situation or resist the aggressor’s sexual advances. In one way or another, these persons are helpless.
North Carolina’s second-degree rape statute does not suffer from vagueness. It covers a specific and limited universe of conduct. And each disjunctive variant under the statute entails some form of force. The record of Shell’s conviction does not specify whether he was convicted under subsection (a)(1) or (a)(2). See J.A. 62, 119-20.
The majority could scarcely argue that subsection (a)(1) — which criminalizes sex “[b]y force and against the will of the other person,” N.C. GemStat. § 14-27.3(a)(l)— falls short of a crime of violence. The forcible nature of this crime is self-evident. See U.S.S.G. § 4B1.2(a)(l) & cmt. n. 1. Shell’s only possible refuge lies in subsection (a)(2) of the North Carolina statute. But raping a mentally disabled, mentally incapacitated, or physically helpless person is a forcible sex offense and a crime of violence — so much so that only our esteemed profession could complicate the inquiry.
B.
In addressing the nature of this North Carolina predicate offense, I must first acknowledge the validity of the majority’s concerns. It is important not to let predicate crimes of violence metastasize. I agree with the majority that it is unfair to tag defendants with predicate crimes of violence when a state statute is in reality capable of many nonviolent applications. Notwithstanding this, I think the majority is quite wrong to expand the whole concept of nonforcible or nonviolent rape. Even apart from the cognitive jolt delivered by such terms, North Carolina’s statute is limited in all kinds of ways that the majority has failed both to acknowledge and to appreciate.
Second-degree rape in North Carolina involves the three basic elements of (1) “vaginal intercourse,” (2) “force,” and (3) “lack of consent.” State v. Smith, 360 N.C. 341, 626 S.E.2d 258, 261 (2006); see N.C. GemStat. § 14-27.3(a)(l)-(2). The critical issue in the present case is force. The Supreme Court of North Carolina’s binding case law interpreting this state statute is exceptionally clear. See United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir.2014) (en banc). The Guidelines require “forcible sex offenses.” Second-degree rape of any kind in North Carolina requires an element of force. Force may assume various legal labels in different cases — actual, constructive, implied — but, under any name, it is still exactly that: force.
The history of North Carolina’s laws against rape confirms that force is an indispensable element of the offense. North Carolina’s rape statutes “essentially codify the common law of rape.” State v. Moorman, 320 N.C. 387, 358 S.E.2d 502, 506 (1987). The common law “implied in law the elements of force and lack of consent,” with the result that the crime of rape was *351 “complete upon the mere showing of sexual intercourse with a person who is asleep, unconscious, or otherwise incapacitated.” Id. at 505. Under the modern second-degree rape statute, “it makes no difference whether the indictment alleges that the vaginal intercourse was by force and against the victim’s will,” as in § 14-27.3(a)(1), “or whether it alleges merely the vaginal intercourse with an incapacitated victim,” as in § 14-27.3(a)(2). Id. at 506 (emphasis added). In the instances covered by subsection (a)(2), “sexual intercourse with the victim is ipso facto rape because the force and lack of consent are implied in law.” Id. As a legal matter, the threshold force required for a conviction under either subsection is the same.
The Supreme Court of North Carolina has spoken with utmost clarity about the nature of crimes of rape in that state. In the context of North Carolina’s own sentencing laws, the state’s highest court has stated plainly, “[W]e reject the notion of any felony which may properly be deemed ‘non-violent rape.’ ” State v. Holden, 338 N.C. 394, 450 S.E.2d 878, 884 (1994) (emphasis added) (discussing N.C. Gen.Stat. § 15A-2000(e)(3)). In North Carolina, “rape is a felony which has as an element the use or threat of violence to the person.” Id. at 883. Indeed, even “the crime of attempted rape always involves at least a ‘threat of violence.’ ” Id. at 884.
North Carolina’s highest court has specifically rejected a claim very much like the one endorsed by today’s majority. In Holden, the defendant argued that his pri- or conviction for attempted second-degree rape did not necessarily constitute a crime of violence under North Carolina law, because the conviction could have involved sex with a person who was mentally disabled, mentally incapacitated, or physically helpless. N.C. Gen.Stat. § 14-27.3(a)(2). But the court firmly disagreed. Holden, 450 S.E.2d at 883-84.
The key to the Holden court’s ruling was the presence of force, and indeed violence, in any instance of rape. Whether the victim refuses to consent, as in subsection (a)(1), or whether the victim cannot consent because of a mental or physical impairment, as in subsection (a)(2), the analysis is the same. Id. at 884-85. Under North Carolina law, “the force inherent to having sexual intercourse with a person who is deemed by law to be unable to consent is sufficient to amount to ‘violence.’” Id. at 884 (emphasis added). In interpreting North Carolina’s second-degree rape statute, we could hardly ask for a clearer mandate from the state’s highest court. The majority’s novel felony of “non-violent rape” is an oxymoron not recognized in North Carolina law. Id.
This interpretation of North Carolina’s rape statutes is now firmly rooted in the state’s jurisprudence. The Court of Appeals of North Carolina has heeded the dictates of the state’s highest court. “The gravamen of the offense of second[-]degree rape,” the Court of Appeals recently reaffirmed, “is forcible sexual intercourse.” State v. Haddock, 191 N.C.App. 474, 664 S.E.2d 339, 344 (2008). The stipulated conditions of mental disability, mental incapacity, and physical helplessness simply constitute “alternative means by which the force necessary to complete a rape may be shown.” Id. at 345; see, e.g., State v. Washington, 131 N.C.App. 156, 506 S.E.2d 283, 290 (1998); State v. Martin, 126 N.C.App. 426, 485 S.E.2d 352, 354 (1997) (Wynn, J.); State v. Aiken, 73 N.C.App. 487, 326 S.E.2d 919, 926 (1985).
The majority too quickly dismisses the “force clause” of the career-offender Guidelines provision, § 4B1.2(a)(l), and too readily assails the straw man of the “residual clause,” § 4B1.2(a)(2). See Maj. Op. at *352 341-43. The residual clause covers any felony that is a “burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B1.2(a)(2). The majority relies on United States v. Thornton, 554 F.3d 443 (4th Cir.2009). But the differences between that case and this are night and day. The Virginia law in Thornton criminalized “ ‘carnal knowledge’ ” of a minor “ ‘without the use of force,’ ” 554 F.3d at 445 n. 2 (emphasis added) — quite unlike North Carolina’s forcible crime of second-degree rape. Because the force clause obviously did not apply, id. at 446, all that remained was the residual clause, which the court understandably deemed a poor fit, id. at 446-49. The majority’s discussion of Thornton and the residual clause is thus inapposite.
C.
The majority maintains that the rape of a mentally disabled, mentally incapacitated, or physically helpless person is analogous to statutory rape. The shared logic of those crimes, according to the majority, is that “the fact of consent is not a defense where the victim is unable to give legally valid consent by virtue of age or by virtue of mental disability.” Maj. Op. at 340. But the analogy is misguided. As a preliminary matter, North Carolina’s second-degree rape statute does not target statutory rape. See N.C. Gen.Stat. § 14 — 27.3; J.A. 60-66. It makes no mention of the victim’s age. It is instead defined by the victim’s mental or physical defenselessness and an inability to fathom the basic situation or oppose the aggressor’s actions.
I would not equate age and impairment. Some teenagers are mature and responsible; others are decidedly not. But all the victims under North Carolina’s second-degree rape statute are by definition required to be lacking in basic mental or physical capacity. Unlike with statutory rape, the extent of the victim’s disability must be individually established, sometimes with expert testimony. See State v. Hunt, 365 N.C. 432, 722 S.E.2d 484, 491-92 (2012). Such circumstances, based on a person’s particular mental or physical characteristics, differ markedly from legally insufficient consent based on age alone.
The differences do not stop there. Compulsion is not the operative factor in the crime of statutory rape. This court has already underscored that distinction in the Guidelines context as well. As we observed in an assessment of § 2L1.2, “it is clear that the Sentencing Commission purposely juxtaposed the neighboring terms ‘forcible sex offense[ ]’ and ‘statutory rape,’ with the former intended to connote rape or other qualifying conduct by compulsion and the latter intended to connote rape on account of the victim’s age.” United States v. Rangel-Castaneda, 709 F.3d 373, 380 (4th Cir.2013) (emphasis added). Indeed, we specifically held that a Tennessee statutory rape conviction did not qualify as a forcible sex offense. Id. Before today, at least, the distinction between forcible sex offenses and statutory rape was sharply defined.
Even the cases cited by the majority actually underscore the distinction between second-degree rape and statutory rape. See Maj. Op. at 339-40. The majority quotes a state senator who likened an underlying 1979 bill to “ ‘basically a statutory rape section.’ ” State v. Atkins, 193 N.C.App. 200, 666 S.E.2d 809, 812 (2008) (emphasis added). But the legislator goes on to note a key distinction: this law would apply “ ‘in cases where someone engages in a sex act with a person who is, in fact, incapable of resisting or communicating resistance’ ” — against the perpetrator’s *353 forcible actions. Id. Atkins itself provides . a telling example: the victim was a severely arthritic eighty-three-year-old woman who was deemed “physically helpless” based on her apparent inability “to actively oppose or resist her attacker.” Id. at 812-13; see also State v. Huss, 223 N.C.App. 480, 734 S.E.2d 612, 615 (2012) (noting that the “factors and attributes” examined in Atkins “were unique and personal to the victim”), aff'd by an equally divided court, 367 N.C. 162, 749 S.E.2d 279 (2013) (per curiam). The majority cites another case comparing second-degree rape and statutory rape. State v. Banks, 367 N.C. 652, 766 S.E.2d 334 (2014). In fact, that was a double jeopardy case — and the Supreme Court of North Carolina expressly found them to be separate and distinct offenses. Id. at 339; see Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
Statutory rape is, finally, a crime of strict liability in North Carolina. State v. Anthony, 351 N.C. 611, 528 S.E.2d 321, 323-25 (2000). Laws against statutory rape traditionally lack a mens rea requirement. 2 Wayne R. LaFave, Substantive Criminal Law §§ 5.5, 17.4 (2d ed.2014). Unlike with statutory rape, this provision contains a strong mens rea requirement. To be convicted under subsection (a)(2), the perpetrator must have known, or reasonably should have known, that the victim was mentally disabled, mentally incapacitated, or physically helpless. N.C. Gen. Stat. § 14-27.3(a)(2). This knowledge forms part of the element of force that is present in virtually all crimes of rape under North Carolina law — besides the strict Lability offense of statutory rape.
The threshold act under subsection (a)(2) is sexual intercourse with a mentally or physically defenseless victim. This is a crime of forcible sexual compulsion. Lack of legally valid consent is but one feature of this offense. One wonders how it has come to be that a perpetrator who acted with guilty knowledge — to take advantage of a profoundly vulnerable victim who is unable to resist — could now escape sanction, for the prior commission of what the Guidelines require: a “forcible” sex offense.[3]
D.
“Force” may involve the exertion of “[p]ower, violence, or pressure” against an *354 other person. Black’s Law Dictionary 717 (9th ed.2009). This conception of force is integral to the North Carolina statute. Yet the majority’s argument suggests that second-degree rape is somehow not “forcible” enough to be a forcible sex offense, or not “violent” enough to be a crime of violence.
For its own understanding of “force,” the majority relies on the Supreme Court’s pronouncements in Johnson v. United States, 559 U.S. 133, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). See Maj. Op. at 341. But Johnson is not like this case. Johnson involved a prior Florida conviction for battery. 559 U.S. at 136-37, 130 S.Ct. 1265. With the common law crime of battery, the element of “force” was “satisfied by even the slightest offensive touching.” Id. at 139, 130 S.Ct. 1265. For the Court, that threshold was too low when applied to a “violent felony.” Id. at 140, 130 S.Ct. 1265; see also Aparicio-Soria, 740 F.3d at 154-55. In modern parlance, the various definitions of “force” generally do not denote slight touching. Johnson, 559 U.S. at 138-41, 130 S.Ct. 1265. The degree of power or pressure indicated by the term “force” is not infinitely expansive. Context does matter. Id. at 139-40,130 S.Ct. 1265. And de minimis contact is assuredly not the issue with the pertinent forms of second-degree rape punished under North Carolina law. Forcible intercourse is light-years removed from nominal battery.
„ The majority fails to grasp any of the multiple ways in which the North Carolina second-degree rape offense is circumscribed and limited. The forcible nature of this particular crime is unmistakable. The differences between this offense and statutory rape or nominal battery are clear. Nor does the majority appreciate the narrow range of mentally or physically defenseless persons to which this statute applies, on a personalized basis. The reality of what is happening to these victims quite eludes the majority’s view. The categorical approach applied by the majority rightly bars our inquiry into the particulars of any single predicate offense. It should not blind us to, in the words of Woody Guthrie, “a picture from life’s other side.”
II.
The problems with the majority’s approach do not end at the borders of North Carolina. Its decision is also inconsistent with precedents that, until now, seemed to speak with a clear and singular voice about the law governing this circuit. Our past pronouncements left no doubt about the inexorably forcible character of this brutal, unfeeling act.
A.
This court has already determined, in the context of a comparable Guidelines provision, that second-degree rape under a parallel state statute did constitute a forcible sex offense and thus qualified as a “crime of violence.” United States v. Chacon, 533 F.3d 250, 252 (4th Cir.2008). The pertinent parts of the Maryland second-degree rape statute at issue in Chacon were functionally identical to those in the North Carolina law here. The Maryland statute criminalized “vaginal intercourse” committed (1) “[b]y force or threat of force against the will and without the consent of the other person”; (2) with a victim who is “mentally defective, mentally incapacitated, or physically helpless,” when the perpetrator “knows or should reasonably know” of the condition; or (3) with a victim “under 14 years of age,” when the perpetrator is “at least four years older than the victim.” Md.Code Ann. art. 27, § 463(a)(l)-(3) (repealed 2002) (current version at Md.Code Ann., Crim. Law § 3-304(a)(l)-(3)).
*355 In Chacon, we recognized the fundamentally forcible nature of this crime. Examining the Guidelines provision for illegally reentering the United States, U.S.S.G. § 2L1.2, this court concluded that a violation of Maryland’s second-degree rape statute was categorically a forcible sex offense within the ambit of a “crime of violence,” Chacon, 533 F.3d at 252. The court’s reasoning was this: even without a requirement of the use of physical force, a crime under the Maryland statute was necessarily achieved through some form of compulsion. Id. at 255-56.
Contrary to the majority’s suggestion, see Maj. Op. at 343-46, this court’s analysis in Chacon applies with equal if not greater power in this case. As with the Guidelines provisions that applied to Shell, U.S.S.G. §§ 2K2.1, 4B1.2, the illegal-reentry Guidelines provision at- issue in Chacon provided for a sentencing enhancement if the defendant had previously sustained a felony conviction for a “crime of violence,” id. § 2L1.2. In the definition of “crime of violence,” the commentary to the illegal-reentry provision likewise listed “forcible sex offenses.” Id. § 2L1.2 cmt. n. l(B)(iii). This court focused on the “ordinary, contemporary meaning” of the term “forcible sex offenses,” which is not defined in the Guidelines. Chacon, 533 F.3d at 257; see Smith v. United States, 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). Perusing dictionary definitions of “force” and “forcible,” the court gleaned a significant insight: “a ‘forcible sex offense’ may be accomplished in the absence of physical force” per se. Chacon, 533 F.3d at 257 (emphasis added). Properly understood, “the use of force necessarily involves a degree of compulsion.” Id. And that compulsion “can be effected through ‘power’ or ‘pressure,’ which do not necessarily have physical components.” Id.
The Maryland statute in Chacon contained a provision virtually identical to the disputed North Carolina provision in this case. Both states’ second-degree rape laws criminalize sexual intercourse with a person who is mentally or physically defenseless, where the perpetrator knows or reasonably should know of the victim’s condition. See Md.Code Ann. art. 27, § 463(a)(2); N.C. Gen.Stat. § 14-27.3(a)(2). For these crimes, “any noncon-sensual sexual contact is forcible because, if actual physical force is unnecessary, some degree of compulsion is nevertheless required to overcome an unwilling victim or take advantage of a helpless and inca-, pacitated one.” Chacon, 533 F.3d at 255-56. The only difference between this case and Chacon is that this statute comes from North Carolina, while the statute in Cha-con came from Maryland. That point of distinction embodies no neutral principle.
B.
The majority makes much of a technical amendment to the illegal-reentry Guidelines provision that became effective shortly after we handed down Chacon. U.S.S.G. app. C, amend. 722, at 301-03; see Maj. Op. at 345-46. That amendment made clear that “forcible sex offenses” do in fact include instances “where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced.” Id. § 2L1.2 cmt. n. l(B)(iii). As this court later confirmed, the amendment “was intended simply to clarify that the requisite compulsion need not be physical in nature,” and the revised Guidelines language was fully in line with our prior holding in Chacon. United States v. Rangel-Castaneda, 709 F.3d 373, 380 (4th Cir.2013). The amendment did not alter the governing analysis. If anything, the language of the amendment specifically reinforces the interpretation that the term “forcible sex *356 offenses” here does refer to crimes of compulsion.
In excluding North Carolina’s second-degree rape statute from the “crime of violence” definition under § 4B1.2, the majority can only grasp at the thin reed of negative implication. The trouble is that the positive indications undercut the majority’s conclusion.
Neither the modified illegal-reentry language in § 2L1.2 nor the unmodified career-offender language in § 4B1.2 supports the majority’s proffered requirement of the use of physical force. The Sentencing Commission has not chosen to alter the language in the career-offender provision to impose such a requirement. S.ee Cha-con 533 F.3d at 257-58.
The Commission simply has not restricted the meaning of “forcible sex offenses” as the majority does today. Had it wanted to do so, the Commission could easily have added to § 4B1.2 a phrase excluding from the definition of forcible sex offense cases where consent to the conduct was merely “involuntary, incompetent, or coerced.” See U.S.S.G. § 2L1.2 cmt. n. l(B)(iii). Yet the Commission did no such thing.
The majority professes not to “question” Chacon’s interpretation of forcible sex offenses under § 2L1.2, even as it “reach[es] a different result under § 4B1.2'” Maj. Op. at 345. The Chacon court, however, would be surprised to learn its ruling was a ticket for one train only. It is not right to cast aside precedents on such a slim and precarious basis.
C.
The North Carolina statute requires the state to show force. See supra Section I.B. The majority suggests, however, that, even if the statute does require force, that would still be insufficient, because the text of § 4B1.2 and the accompanying Guidelines commentary are fatally inconsistent. The majority stresses that § 4B1.2 requires “physical force,” whereas the commentary omits the word “physical” and alludes only to “forcible sex offenses.” See Maj. Op. at 340-41. The majority’s conclusion of inconsistency not only is incorrect, but will spell trouble down the road in future Guidelines cases.
First, in finding an inconsistency, the majority misconstrues the Supreme Court’s mandate in Stinson v. United States, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The commentary generally deserves “ ‘controlling weight.’ ” Id. at 45, 113 S.Ct. 1913 (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)). After all, the very same Sentencing Commission promulgates both the Guidelines text and ■ the accompanying commentary. Id. at 40-41,113 S.Ct. 1913. ’This is not an instance where an agency rale purports to interpret the work of a different instrumentality such as Congress. Id. at 44, 113 S.Ct. 1913.- On the contrary, the Commission is simply interpreting its own work. Id. at 44-45, 113 S.Ct. 1913. Stipulations contained in the commentary need “not be compelled by the guideline text.” Id. at 47, 113 S.Ct. 1913 (emphasis added). The commentary may give specific form to a broad textual mandate — that is precisely why the Commission provides both.
Second, there is no nettlesome conflict here between felonies involving “the use, attempted use, or threatened use of physical force,” U.S.S.G. § 4B1.2(a)(l), and felonies that qualify as “forcible sex offenses,” id. § 4B1.2 cmt. n. 1. Whether the prosecution proves the defendant had sex by force and against the other person’s will, or whether the element of force is fastened to proof that the defendant had-sex with a mentally or physically defenseless victim, these are simply alternative but equal *357 pathways for demonstrating force.. See N.C. GemStat. § 14-27.3(a)(l)-(2); supra Section I.B. Pointedly, the illegal-reentry provision specifically equates “forcible sex offenses” with “any other offense” involving “physical force.” U.S.S.G. § 2L1.2 cmt. n. l(B)(iii). We should be loath to find the Commission at war with itself and, in so doing, to disregard the settled maxim that the provision of specific instructions, a conventional function of Guidelines commentary, presumptively trumps more general statements. See RadLAX Gateway Hotel, LLC v. Amalgamated Bank, — U.S. -, 132 S.Ct. 2065, 2070-72, 182 L.Ed.2d 967 (2012).
And third, the instances in which this court has invalidated part of the commentary as inconsistent with the Guidelines text are quite rare. See Stinson, 508 U.S. at 38, 113 S.Ct. 1913. On what basis is a federal court, in the role of haruspex, supposed to divine such a delicate inconsistency hidden among the Commission’s own pronouncements? Cf. City of Arlington v. FCC, — U.S.-, 133 S.Ct. 1863, 1871, — L.Ed.2d-(2013). Presumably, the rare occurrences of such purported “inconsistency” holdings still bespeak an understanding by our own and other courts that the Sentencing Commission, through its commentary, can and routinely does provide specific elucidation of the Guidelines’ more general textual provisions.
D.
Finally, the majority reads too much into the fact that certain other sex offenses appear in § 2L1.2 but not § 4B1.2. See Maj. Op. at 345. The illegal-reentry provision, § 2L1.2, lists not only “forcible sex offenses” but also “statutory rape” and “sexual abuse of a minor” as examples of crimes of violence. U.S.S.G. § 2L1.2 cmt. n. l(B)(iii). The career-offender provision that applied to Shell, § 4B1.2, mentions “forcible sex offenses” but not the other two crimes. Id. § 4B1.2 cmt. n. 1. But here, those differences are immaterial.
It is true that Chacon involved § 2L1.2 rather than § 4B1.2. But the logic of the majority turns the old Latin maxim on its head: instead of applying expressio unius est exclusio alterius (i.e., “the expression of one thing is the exclusion of the other”), the majority treats the exclusion of one term (“statutory rape”) as the expression of another term (“forcible sex offenses”) with new meaning. The proper inference, rather, is simply that the Sentencing Commission deliberately excluded the crime of statutory rape from § 4B1.2, see Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452-53, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) — not that it was modifying the definition of “forcible sex offenses” sub silentio.
In fact, the balance of the available indications suggests that the Sentencing Commission wanted “forcible sex offenses” to retain the same meaning in §§ 2L1.2 and 4B1.2. The “ ‘normal rule of statutory construction’ ” is that “ ‘identical words used in different parts of the same act are intended to have the same meaning.’ ” Gustafson v. Alloyd Co., 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (quoting Dep’t of Revenue v. ACF Indus., Inc., 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994)). Context matters, to be sure. But the interpretive context is not appreciably different here. On the contrary, “forcible sex offenses” is a distinct term with a consistent meaning across §§ 2L1.2 and 4B1.2.
I doubt that the majority would argue that the crimes of murder, manslaughter, kidnapping, aggravated' assault, robbery, arson, extortion, extortionate extension of credit, or burglary of a dwelling — all, like forcible sex offenses, enumerated in both Guidelines provisions — would assume a substantively different meaning in the two *358 provisions. This is precisely the point of the categorical approach mandated by the Supreme Court: we compare the elements of the particular predicate offense with “the elements of the ‘generic’ crime' — i.e., the offense as commonly understood.” Descamps v. United States, — U.S.-, 133 S.Ct. 2276, 2281, 186 L.Ed.2d 438 (2013). After today’s ruling, the rest of us are left to wonder how the generic definition of “forcible sex offenses” could have changed so swiftly and abruptly.
The term “forcible sex offenses” is not quite the chameleon the majority says it is. In fact, in advancing a view of Guidelines interpretation where identical terms assume different meanings at a blink, the majority has started us down the road of a confusing and contradictory Guidelines structure, thus rendering an already difficult interpretive exercise more arcane and byzantine. In sum, the newly contradictory status of our precedents, the new receptivity to finding Guidelines text and commentary at odds, and the new willingness to imbue the same terms with shifting meanings will, whether taken singly or in combination, create crosscurrents and riptides in Guidelines jurisprudence. That does not bode well for those who need or aspire to understand them.
HI.
I do understand that the circumstances surrounding sexual interactions are often hazy, a fact that makes the preservation of due process protections for accused persons a necessity in all settings. But here the majority has chosen essentially to absolve, through its construct of nonviolent rape, individuals accorded the full slate of protections in our criminal justice system. Doctrinal analysis is indispensable to judicial reasoning, but upon occasion it can lead, increment by increment, from sound beginnings toward untenable conclusions. So it is here: the real need to protect the unthinking expansion of “crimes of violence” has led to a race to restrict them. If such a restriction makes sense in many instances, it does not in the case at bar. The victims here cannot resist; they cannot consent. But they yet retain the capacity to feel the trauma and, yes, the violence that has been so visited upon their very beings. The majority nevertheless maintains that the rape of someone known to be mentally disabled, mentally incapacitated, or physically helpless is neither a forcible sex offense nor a crime of violence. The victims, were they even sentient, would beg to differ. They know not our precedents. They know not our doctrines. But somewhere in the recesses of consciousness they do know they have been wronged, and we now know that law has failed to duly recognize it.
I respectfully dissent.

. I agree with the majority that Shell was required to know, for the purposes of an enhancement under U.S.S.G. § 3C1.2, that he was being pursued by a law enforcement officer. While I think the district court’s discussion has already incorporated the fact of such knowledge, I have no objection to remanding for a further finding on the point.

. Of course, the meaning of a federal provision, be it statutory or regulatory or Sentencing Guideline, is a federal question. See Johnson v. United States, 559 U.S. 133, 138, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). But the elements of a predicate state offense are obviously a question of state law, see id., and determining those elements is obviously a critical step here: our express charge is to compare the elements of the predicate state offense with the elements of the "generic” crime, see Descamps v. United States,-U.S. -, 133 S.Ct. 2276, 2281, 186 L.Ed.2d 438 (2013). In fact, in construing this North Carolina statute, we are bound by the interpretations and decisions of the Supreme Court of North Carolina. See Johnson, 559 U.S. at 138, 130 S.Ct. 1265; United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir.2014) (en banc). No federal court "has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.” Johnson v. Fankell, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997). Examining North Carolina’s case law is an essential part of the inquiry before us.

. In its effort to portray many of these crimes as not so very serious, the majority’s discussion of anecdotal evidence about Shell’s earlier conviction, see Maj. Op. at 340 n. 1, impermissibly compromises the categorical approach. "Sentencing courts may look only to the statutory definitions' — i.e., the elements — of a defendant’s prior offenses, and not 'to the particular facts underlying those convictions.' ” Descamps v. United States, - U.S.-, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013) (quoting Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)). Despite its disclaimers, the majority nevertheless proceeds to sift through the scant and fragmentary indications in the record to try to ascertain highly questionable "facts” underlying Shell’s predicate offense. Its efforts illustrate why the categorical approach obliges courts to examine “elements, not facts.” Id. The alternative ís this sort of attempted factfinding from the remove of the appellate bench — here, without the benefit of the state court’s or the sentencing court’s findings as to those "facts,” without adequate elucidation of the surrounding circumstances, and without any indicia of the transparently self-serving testimony’s reliability. What we do know is that Shell was con-. victed of North Carolina’s forcible crime of second-degree rape, which criminalizes vaginal intercourse with someone known to be mentally disabled, mentally incapacitated, or physically helpless. The categorical approach turns on those statutory elements. The majority, however, slides by that approach, notwithstanding the heartbreaking instances of second-degree rape that lie in the weeds of predicate convictions through which federal courts in the course of Guidelines calculations such as this are not permitted to trek.